**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**ANTONIO HARRIS,**

**Plaintiff,**

**v.** **CIVIL NO.: 2:25-cv-653**

**EQUIFAX INFORMATION SERVICES, LLC, ET AL.,**

**Defendants.**

**MEMORANDUM ORDER**

This matter comes before the court on two (2) motions to dismiss: (1) Defendant United States Department of Education's ("DOE") Motion to Dismiss, ECF No. 31 ("DOE's Motion to Dismiss"); and (2) Defendant Nelnet Servicing, LLC's ("Nelnet") Motion to Dismiss, ECF No. 33 ("Nelnet's Motion to Dismiss"). For the reasons stated below, the Motions to Dismiss are **DENIED**.

## I. FACTUAL BACKGROUND[1]

### A. The Parties

This case arises from the reporting of fraudulent student loan accounts on Plaintiff's consumer credit reports. But first, a brief summary of the relevant parties is warranted. Plaintiff,

---

[1] For purposes of ruling on a motion to dismiss, the court must draw the alleged facts from the complaint, accept them as true, and view them in the light most favorable to the plaintiff. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).

an individual, brings this action against five (5) Defendants: Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); TransUnion, LLC ("TransUnion"); the DOE; and Nelnet. See ECF No. 27 (Amended Complaint). Equifax, Experian, and TransUnion are all national consumer reporting agencies ("CRAs").[2] Id. ¶¶ 29, 32, 35. CRAs are responsible for compiling consumer data into credit reports; CRAs receive this consumer data from furnishers of credit information,[3] such as credit lenders and loan servicers. See Roberts v. Carter-Young, Inc., 131 F.4th 241, 245 (4th Cir. 2025).

The DOE is one such furnisher, as it is responsible for the origination, management, and regulation of federal student loans. See 20 U.S.C. § 1087a. Federal law requires the DOE to disclose certain borrower information related to unpaid student loans to CRAs. See id. § 1080a(a). The DOE will also frequently contract with third-party loan servicers, such as Nelnet, to assist in the administration of student loans to eligible borrowers. See 34 C.F.R. § 688.25. As a loan servicer, Nelnet is responsible

---

[2] The Fair Credit Reporting Act defines CRAs as entities that are regularly engaged "in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f).

[3] Relevant here, a "furnisher" is "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 16 C.F.R. § 660.2(c); see infra Section IV.B.1.a.

for processing loan payments, maintaining loan records, and providing customer service to borrowers. See id.

**B. Alleged Facts**

The court now turns to the alleged facts underlying this dispute. In or around 2020, Plaintiff discovered that student loan accounts had been opened in his name without his knowledge or consent. ECF No. 27 ¶¶ 65-67. After reporting the identity theft to the police, Plaintiff notified Nelnet and the DOE of the fraud, as they appeared to be the furnishers of the student loan accounts,[4] and disputed the information on his credit reports with Equifax, Experian, and TransUnion (collectively, the "CRA Defendants"). Id. ¶ 67; see id. ¶¶ 29, 32, 35. Despite his disputes, Defendants continued reporting the loans on Plaintiff's credit. Id. ¶ 68.

In or around October 2023, Plaintiff discovered that each of the CRA Defendants were reporting three (3) fraudulent student loan accounts with "DEPT OF ED/NELNET" (the "NELNET Loans") on Plaintiff's credit reports. Id. ¶ 69. Plaintiff also discovered that Equifax and Experian were reporting a fourth fraudulent account with "U.S. Department of Education/GLELSI"[5] (the "GLELSI

[4] "[A]t the time of Plaintiff's 2020 disputes, the student loans were reporting on Plaintiff's credit as an account with U.S. Department of Education/GLELSI." ECF No. 27 ¶ 67 n.4; see infra note 5 and accompanying text.

[5] Nelnet and GLELSI (Great Lakes Educational Loan Services, Inc.) are entities used by the DOE to fulfill its loan servicing obligations. See ECF No. 27 ¶ 14. Nelnet acquired GLELSI's loan

Loan"). Id. All the loan accounts were associated with an address in Norfolk, Virginia, "where Plaintiff has never lived, never worked, and never attended school." Id. ¶ 50.

In December 2023, Plaintiff mailed written letters to each CRA Defendant, disputing the accuracy of the loan information on the respective credit reports and "explain[ing] that he never applied for or authorized a student loan." See id. ¶¶ 71-74.

On or around December 15, 2023, TransUnion mailed "investigation results" to Plaintiff in response to his dispute, which showed that "Defendant Furnishers[6] had 'verified' the fraudulent reporting of the three [NELNET Loans.]" Id. ¶ 75. TransUnion and Nelnet continued reporting the NELNET Loans on Plaintiff's credit. Id.

On or around December 16, 2023, Experian sent "dispute results" to Plaintiff, which showed that the three (3) NELNET Loans "had been deleted from Plaintiff's report." Id. ¶ 76 (emphasis added). The dispute results also provided that "Nelnet had 'updated' its reporting of the [GLELSI Loan]." Id. Experian and

---

servicing business in 2018, so any loans reflected on Plaintiff's credit reports as being serviced by "GLELSI" were actually serviced by Nelnet. Id. ¶¶ 15-16.

[6] The Amended Complaint generally pleads "acts or omissions committed by the DOE, acts or omissions committed by Nelnet, and acts or omissions committed by both entities" by referring to both the DOE and Nelnet as "Defendant Furnishers." ECF No. 27 ¶ 19.

Nelnet continued to report the GLELSI Loan on Plaintiff's credit. Id.

On December 19, 2023, Equifax sent "dispute results" to Plaintiff, "explain[ing] that [Equifax] had forwarded Plaintiff's dispute to the Defendant Furnishers, and the three [NELNET Loans] had been deleted" from his credit report. Id. ¶ 77 (emphasis added). However, like Experian, Equifax noted that "it had 'verified' with Nelnet that the [GLELSI Loan] belonged to Plaintiff." Id. Equifax and Nelnet continued to report the GLELSI Loan on Plaintiff's credit. Id.

Between December 12, 2023, and October 1, 2025, the CRA Defendants sold Plaintiff's credit file to various third parties "who read, understood, and otherwise considered th[e] fraudulent information" that Plaintiff had previously disputed. Id. ¶ 112; see, e.g., id. ¶¶ 113-88. As a result, Plaintiff's "credit was significantly destroyed," and he suffered damages in the form of lost credit opportunities, money and time associated with his attempts to fix his credit, and emotional distress. Id. ¶¶ 190-91.

## II. PROCEDURAL HISTORY

Plaintiff initiated the instant action against all five (5) Defendants on October 20, 2025. ECF No. 1 (Complaint). Following a motion to dismiss by Nelnet, see ECF No. 26, Plaintiff filed his Amended Complaint on January 6, 2026, which pleads nine (9) Counts against the various Defendants. See ECF No. 27. Counts I and II

allege violations of the Fair Credit Reporting Act ("FCRA") against Equifax, Experian, and TransUnion for reporting inaccurate information on Plaintiff's credit reports, in violation of 15 U.S.C. § 1681e(b), and for failing to reasonably investigate his disputes regarding those inaccuracies, in violation of 15 U.S.C. § 1681i(a), respectively. Id. ¶¶ 229-44. All the CRA Defendants have filed Answers to the Amended Complaint. See ECF Nos. 29 (Equifax), 30 (Experian), 38 (TransUnion).

The remaining seven (7) Counts are the subject of the instant Motions to Dismiss. Counts III, IV, and V allege violations of the FCRA against the DOE and Nelnet for failing to reasonably investigate Plaintiff's disputes over the accuracy of information in his credit reports, in violation of the provisions under 15 U.S.C. § 1681s-2(b)(1). ECF No. 27 ¶¶ 245-66. Counts VI, VII, VIII, and IX allege various state law claims against only Nelnet for furnishing fraudulent loan information to the CRA Defendants. Id. ¶¶ 267-94. Plaintiff demands a jury trial and seeks actual and punitive damages from all Defendants. Id. at 52.

On January 20, 2026,[7] the DOE moved to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 31 (Motion), 32 (Memorandum). That

---

[7] On the same day, Defendants Equifax and Experian each filed an Answer. ECF Nos. 29, 30. TransUnion filed its Answer the following day, on January 21, 2026. ECF No. 38.

same day, Nelnet filed its Motion to Dismiss for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). ECF No. 33 (Motion).[8] Plaintiff filed an Opposition to each respective Motion to Dismiss on February 17, 2026. ECF Nos. 45 (Opposition to the DOE's Motion), 46 (Opposition to Nelnet's Motion). Nelnet filed its Reply on March 2, 2026. ECF No. 50. Following an extension of the filing deadline, see ECF No. 53 (Order), the DOE filed its Reply on March 26, 2026, ECF No. 54. Having been thoroughly briefed, the Motions to Dismiss are now ripe for judicial determination.

## III. MOTION TO DISMISS FOR LACK OF JURISDICTION

### A. Rule 12(b)(1) Standard of Review

"Because standing is a threshold jurisdictional question," Garey v. James S. Farrin, P.C., 35 F.4th 917, 921 (4th Cir. 2022) (citation modified), the court will address that challenge first. Under Article III of the United States Constitution, a federal district court's subject matter jurisdiction is limited to "Cases" and "Controversies." U.S. Const. art. III, § 2; see TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021). "[A]n essential and unchanging part of the case-or-controversy requirement of Article III" is standing. Lujan v. Defs. of Wildlife, 504 U.S.

---

[8] Nelnet did not file a supporting memorandum but rather included its arguments in its Motion to Dismiss. See ECF No. 33.

555, 560 (1992). The plaintiff bears the burden of establishing standing. See id. at 561. To do so, he must adequately allege:

> (1) [He] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000) (citing Lujan, 504 U.S. at 560-61).

**B. Analysis**

Here, Nelnet argues that Plaintiff's allegations are too conclusory to establish a concrete injury-in-fact and that he fails to allege any actual harm resulting from such an injury. ECF No. 33 at 30, 32. In the Amended Complaint, Plaintiff alleges that Nelnet furnished fraudulent information regarding Plaintiff (i.e., the four (4) loan accounts) to the CRA Defendants. See, e.g., ECF No. 27 ¶¶ 75-77, 96, 103, 111. As a result, Plaintiff's credit reports contained inaccurate information, which the CRA Defendants published to various third parties over the course of two (2) years. See, e.g., id. ¶¶ 113-88. Plaintiff alleges that this publication to third parties "significantly destroyed" his credit, id. ¶ 190, which resulted in actual harm in the form of "costs associated with disputing the inaccurate information, harm to credit, loss of credit opportunities," and emotional distress, see id. ¶¶ 248, 255, 264.

At the motion to dismiss stage, the alleged publication of Plaintiff's inaccurate credit information to a third party, in addition to the other alleged financial and emotional harms, are concrete injuries-in-fact for purposes of standing. See, e.g., TransUnion, 594 U.S. at 433 (holding that the "class members whose [credit] reports were disseminated to third parties suffered a concrete injury in fact under Article III"); Evans v. Am. Collection Enter., 624 F. Supp. 3d 593, 602 (D. Md. 2022) ("[U]nder TransUnion, dissemination of allegedly defamatory information to a third party is sufficient to cause a concrete injury. This includes disclosure by a debt collector to credit reporting agencies.") (citations omitted)); Miller v. Dish Network, L.L.C., 326 F. Supp. 3d 51, 60-61 (E.D. Va. 2018) (Payne, J.) ("[T]he Fourth Circuit [has taken] the view that a reduction in credit score (without a resulting denial of credit or higher interest rate) could serve as an injury in fact, and the Court can discern no reason why that view would not apply in the FCRA context."); id. at 61 ("Emotional distress has been found to constitute an injury in fact under the FCRA." (collecting cases)). Because these alleged, concrete harms arising from Nelnet's conduct could be redressed by a damages award, Plaintiff has met his burden to establish standing. See TransUnion, 594 U.S. at 433; Friends of

the Earth, 528 U.S. at 180-81. Accordingly, the court **DENIES** Nelnet's Motion to Dismiss, ECF No. 33, on the basis of standing.[9]

## IV. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. Rule 12(b)(6) Standard of Review

A motion to dismiss for failure to state a claim under Rule 12(b)(6) "tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). While a complaint "does not need detailed factual allegations," under the Rule 12(b)(6) standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted).

Here, the DOE and Nelnet seek relief under Rule 12(b)(6) from Counts III, IV, and V, which allege violations of the FCRA (collectively, the "FCRA Claims"). See ECF Nos. 32 at 10 (DOE),

---

[9] Nelnet's Motion to Dismiss primarily challenges Plaintiff's standing to bring his FCRA claims under Counts III, IV, and V. See ECF No. 33 at 30. But because Plaintiff's state-law claims under Counts VI, VII, VIII, and IX are parallel to or derivative of the federal claims, see infra Section IV.C., the court finds that Plaintiff has established standing to bring those claims as well.

33 at 11 (Nelnet). Nelnet also seeks relief under Rule 12(b)(6) from Counts VI, VII, VIII, and IX, all of which arise under various provisions of the Virginia Code. See ECF No. 33 at 24. The court will first analyze the FCRA Claims before turning to the state-law claims.

**B. Counts III, IV, and V: The FCRA Claims**

Counts III, IV, and V of the Amended Complaint allege that the DOE and Nelnet, as the alleged furnishers of the disputed loans on Plaintiff's credit reports, willfully and/or negligently failed to comply with the requirements under Section 1681s-2(b)(1) of the FCRA. ECF No. 27 ¶¶ 245-66. Section 1681s-2 outlines the duties imposed on furnishers of credit information to CRAs. See 15 U.S.C. § 1681s-2(a). "If a consumer notifies a CRA that he disputes the accuracy of an item in his file, FCRA requires the CRA to notify the furnisher of the dispute." Saunders v. Branch Banking & Trust Co. of VA, 526 F.3d 142, 148 (4th Cir. 2008) (citing 15 U.S.C. § 1681i(a)(2)). Upon such notice, a furnisher must:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the

person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation . . . for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1). Under the FCRA, a consumer may sue a furnisher for its negligent or willful violations of these obligations. See id. §§ 1681n(a), 1681o(a). A consumer may recover actual damages for a furnisher's negligent noncompliance, id. § 1681o(a), and may recover actual and punitive damages for a furnisher's willful noncompliance, id. § 1681n(a).

In this case, Plaintiff alleges that the DOE and Nelnet willfully violated each provision of Section 1681s-2(b)(1); alternatively, he alleges that they negligently violated each provision. See ECF No. 27 ¶¶ 249, 260, 265. Specifically, Count III alleges violations of subsections (b)(1)(A) and (B); Count IV, subsections (b)(1)(C) and (D); and Count V, subsection (b)(1)(E). See id. ¶¶ 245-66; 15 U.S.C. § 1681s-2(b)(1).

In their respective Motions to Dismiss, the DOE and Nelnet first raise distinct arguments challenging Plaintiff's FCRA Claims

at a threshold level. See ECF No. 32 at 10 (DOE), 33 at 13 (Nelnet). Both Defendants further argue that Plaintiff fails to state a claim under Section 1681s-2(b)(1) because (i) his claim of identity theft is not actionable under the FCRA, and (ii) he does not sufficiently allege that their investigations into his disputes were unreasonable. ECF Nos. 32 at 19, 21 (DOE), 33 at 18, 21 (Nelnet). The DOE also submits that Plaintiff's allegations are insufficient to recover punitive damages. See ECF No. 32 at 27.[10] Lastly, the DOE and Nelnet both argue that Plaintiff's allegations of emotional distress are insufficiently pleaded. Id. at 29 (DOE), 33 at 23 (Nelnet). The court will address Defendants' arguments in turn.

### *1. Threshold Arguments*

The DOE and Nelnet first argue that Plaintiff's FCRA Claims fail at a threshold level, though for different reasons. The DOE asserts that Plaintiff fails to allege that the DOE is a "furnisher" subject to liability under the FCRA. ECF No. 32 at 10. Comparatively, Nelnet argues that, under the Higher Education Act, Plaintiff cannot allege that the information on his credit reports is "inaccurate" as a matter of law. ECF No. 33 at 16.

[10] The DOE's Motion to Dismiss also raised a sovereign immunity defense against Plaintiff's FCRA Claims, ECF No. 32 at 25, which the DOE withdrew in its Reply, ECF No. 54 at 6 n.1.

**a. Whether the DOE is a "Furnisher" Under the FCRA**

The DOE claims Plaintiff does not allege that the DOE itself "furnished the disputed information nor that the [DOE] received notice of Plaintiff's dispute from the consumer reporting agencies." ECF No. 32 at 11.[11] The DOE also argues that Plaintiff's "joint allegations against 'Defendant Furnishers'" are insufficient to plead FCRA claims against the DOE. Id. at 12.[12]

The FCRA does not define the term "furnisher." But as noted by the DOE, see ECF No. 32 at 11, applicable federal regulations define a "furnisher" as "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report," 16 C.F.R. § 660.2(c). Under this definition, the court finds that Plaintiff has plausibly alleged that the DOE was a furnisher of the disputed loans. Plaintiff alleges that the loans were listed on his credit reports as "DEPT OF ED/NELNET" and "U.S. Department of Education/GLELSI," indicating that the DOE was the servicer of these loans and thus may have furnished the loan information to the CRA Defendants. See ECF No. 27 ¶¶ 17, 69; cf. 20 U.S.C. § 1080a(a) (requiring that, in issuing federal student loans, the DOE must "enter into an agreement with each consumer reporting agency to exchange

---

[11] See infra note 14 and accompanying text.

[12] See supra note 6 and accompanying text.

information concerning student borrowers" and must disclose such information "with respect to any loan under this part that has not been repaid by the borrower").

Plaintiff also plausibly alleges that the DOE received notice of his disputes from the CRA Defendants. See, e.g., ECF No. 27 ¶ 75 ("[TransUnion's investigation] results show[] that TransUnion had forwarded Plaintiff's dispute to the Defendant Furnishers, and the Defendant Furnishers had 'verified' the fraudulent reporting of the three [NELNET Loans]."); id. ¶ 77 ("Equifax explained that it had forwarded Plaintiff's dispute to the Defendant Furnishers, and the three [NELNET Loans] had been deleted."); see also id. ¶ 91 ("In each instance in which Plaintiff disputed the fraudulent accounts with the CRAs, the CRAs forwarded Plaintiff's disputes to the Defendant Furnishers using an electronic system called 'e-Oscar,' which is an industry-wide process by which consumer disputes are electronically communicated to furnishers and dispute results are electronically communicated back to CRAs."). While these allegations are pleaded against the DOE and Nelnet jointly as "Defendant Furnishers," "nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." Chevron U.S.A. Inc. v. Apex Oil Co., 113 F. Supp. 3d 807, 815 n.1 (D. Md. 2015) (citation modified); see

Fed.R.Civ.P. 8(a)(2) (requiring only "a short and plain statement of the claim").

Importantly, without discovery, the court cannot expect Plaintiff to plead explicit facts regarding the process by which the DOE furnishes loan information to CRAs, and the court declines to hold Plaintiff to such a high pleading standard as demanded by the DOE here. See generally Twombly, 550 U.S. at 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."). Therefore, drawing all inferences in Plaintiff's favor, the court finds that the allegations in the Amended Complaint give rise to the reasonable inference that the DOE furnished the loan information regarding Plaintiff to CRAs, making it a "furnisher" for purposes of Section 1681s-2(b) liability.[13] See id. at 555.

**b. The Higher Education Act**

Nelnet's threshold argument is rooted in the procedures for discharges of student loan obligations set forth in the Higher Education Act ("HEA"), 20 U.S.C. §§ 1001 to 1161aa-1. See ECF No. 33 at 16. The HEA governs the DOE's administration of federal student loans by setting forth their terms and conditions,

---

[13] Because Plaintiff has plausibly alleged that the DOE is directly liable as a furnisher under the FCRA, the court need not address the parties' arguments as to whether the DOE is vicariously liable for the acts of Nelnet as the DOE's agent. See ECF Nos. 32 at 12-13 (DOE), 45 at 10 (Plaintiff's Opposition).

applicable interest rates, and consequences of default. See Biden v. Nebraska, 600 U.S. 477, 484 (2023). Relevant here, if an individual claims he is a victim of identity theft with regard to a federal student loan, the only method by which the debtor may be relieved from his loan obligation is by obtaining a loan discharge from the Secretary of Education through the HEA's prescribed administrative process. See 20 U.S.C. § 1087(c)(1); 34 C.F.R. § 685.215(c)(5).

In its Motion to Dismiss, Nelnet argues that the loan information on Plaintiff's credit reports cannot be "inaccurate" as a matter of law because Plaintiff has not adjudicated his identity theft claim with the DOE. ECF No. 33 at 16. In support of this argument, Nelnet relies heavily on the case of Petrou v. Navient, LLC, No. 17-cv-2033, 2018 WL 3020160 (S.D. Cal. June 15, 2018). See ECF No. 33 at 14-15. In that case, a consumer sued a federal student loan servicer under the FCRA for its alleged failure to sufficiently investigate his disputes regarding loans taken out in his name, which he claimed were the result of identity theft. Petrou, 2018 WL 3020160, at *1. The court held that the "undischarged student loans in [the plaintiff's] credit report cannot be incomplete or inaccurate, particularly prior to any resolution of [the plaintiff's] identity theft claim" pursuant to the HEA. Id. at *3. Based on Petrou, Nelnet asserts that, unless Plaintiff obtains a loan discharge from the DOE, he remains legally

obligated on the loans, and as such, Nelnet's "reporting of the Loans was neither inaccurate nor incomplete." ECF No. 33 at 16-17.

This court does not find Petrou persuasive. While the Fourth Circuit has not addressed this issue, another court in this district has observed that Petrou "conflates a credit-reporting investigation under § 1681s-2(b) with an administrative loan discharge under [the HEA]," and that, to hold otherwise, would "run[] contrary to the remedial purpose of the FCRA." Doss v. Great Lakes Educ. Loan Servs., Inc., No. 3:20-cv-45, 2021 WL 1206800, at *7 n.14 (E.D. Va. Mar. 30, 2021) (Lauck, J.). The court agrees with this conclusion, especially given that "[t]he plain text of FCRA makes clear that the duty to investigate it places on furnishers . . . operates independently of HEA's discharge requirements." Jagodzinski v. Experian Info. Sols., Inc., 798 F. Supp. 3d 344, 347-48 (E.D.N.Y. 2025) (collecting cases). Absent any statutory authority or binding caselaw to the contrary, this court declines to read a requirement into the FCRA that is not apparent its face. Cf. United States v. Boone, 245 F.3d 352, 360 (4th Cir. 2001) ("We decline to read into the statute a requirement that is not readily apparent.").

***2. Failure to State a Claim***

To state a claim under any subpart of Section 1681s-2(b), a plaintiff must allege that "(1) he submitted a dispute over the accuracy of information on a credit report to a consumer reporting

agency; (2) the agency notified the furnisher of that dispute; and (3) the furnisher failed to conduct a reasonable investigation to determine whether the disputed information can be verified." Roberts v. Carter-Young, Inc., 131 F.4th 241, 249 (4th Cir. 2025) (citation modified). In their respective Motions to Dismiss, the DOE and Nelnet both argue that Plaintiff has not plausibly alleged the first or third elements of his FCRA Claims. See ECF Nos. 32 at 19, 21 (DOE),[14] 33 at 18, 21 (Nelnet).

**a. Plaintiff's Alleged Inaccuracy**

The Fourth Circuit recently defined what it means for reported information to be "inaccurate" for purposes of an FCRA claim in Roberts v. Carter-Young. The court held that "reported information is actionably 'inaccurate' only if that information is objectively and readily verifiable." Roberts, 131 F.4th at 251 (quoting Sessa v. TransUnion LLC, 74 F.4th 38, 42 (2d Cir. 2023)). Thus, to satisfy the first element of a Section 1681s-2(b) claim, the plaintiff must plead factual allegations showing that the alleged inaccuracy "is objectively and readily verifiable by the furnisher." Id. at 252.

[14] While raised in a separate section of its Motion to Dismiss, the DOE also contests the sufficiency with which Plaintiff alleges the second element of "notice" for his FCRA Claims. See ECF No. 32 at 11. The DOE raised this point in support of its threshold argument, and as discussed above, the court finds that Plaintiff has established that the DOE was on notice of his disputes by the CRA Defendants. See supra Section IV.B.1.a.

For example, the Roberts court explained that disputes that are not objectively and readily verifiable include those that "involve[] complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform," as well as those that "implicate[] unsettled questions of law and require[] credibility determinations and quasi-discovery." Id. at 251. The court also noted that "[i]naccuracies that are objectively and readily verifiable do not include claims of tortious conduct that require a furnisher to evaluate the subjective nature of the parties' actions—such as claims of fraud or retaliation." Id. (emphasis added). On the other hand, the court provided that "claims that alleged debts never occurred" and "some disputes that implicate legal questions and legal doctrines" may, "in some instances, be objectively and readily verifiable." Id. at 252.

In the Amended Complaint, Plaintiff alleges that the loan information on his credit reports is inaccurate because he is a victim of identity theft and the loans were fraudulently taken out in his name without his permission. See ECF No. 27 ¶¶ 23, 64-66, 69-70. Plaintiff also alleges that in his disputes to the CRA Defendants, which were forwarded to the DOE and Nelnet, he "explained that he never applied for or authorized a student loan." Id. ¶¶ 72-74; see id. ¶ 91.

In their respective Motions to Dismiss, the DOE and Nelnet argue that Plaintiff's claim of identity theft is not objectively

and readily verifiable, emphasizing the Roberts court's identification that "claims of fraud" are not actionable inaccuracies under the FCRA. See ECF Nos. 32 at 19-20 (DOE), 33 at 18-20 (Nelnet). Defendants further assert that Plaintiff's allegations regarding this alleged inaccuracy are conclusory, as he does not allege what specific information he provided to the CRA Defendants in support of his identity theft claim. See ECF Nos. 32 at 19-20 (DOE), 33 at 20 (Nelnet). According to Defendants, requiring them to determine whether the student loans were the result of identity theft would involve "complex fact-gathering, credibility determinations, and the type of quasi-discovery that the Fourth Circuit warned against" in Roberts. ECF No. 33 at 20 (Nelnet); see ECF No. 32 at 19-20 (DOE).

The court recognizes that, alone, Plaintiff's claim that the information on his credit reports was inaccurate because "he never applied for or authorized a student loan" would not make his allegation of identity theft objectively and readily verifiable. See ECF No. 27 ¶¶ 72-74. However, the court does not read the Amended Complaint as narrowly as Defendants. For example, Plaintiff alleges with some specificity that the loan accounts "were opened in [his] name using an address that had never before been associated" with him, which is "a class hallmark of identity theft that should have alerted Defendant Furnishers to this fraud." Id. ¶ 109. Plaintiff also alleges that, upon investigation into

his disputes, both Experian and Equifax deleted the three (3) NELNET Loans from his credit file, id. ¶¶ 76-77, with Equifax even specifying that "it had forwarded Plaintiff's dispute to the Defendant Furnishers," id. ¶ 77. Taken together, these allegations indicate that Plaintiff's claim of identity theft was objectively and readily verifiable, given that, at least with respect to some of the student loans, Defendants did not need to conduct any "credibility determinations" to ascertain whether Plaintiff was the one who took out the loans. As such, Plaintiff has plausibly alleged that the inaccuracies on his credit reports were objectively and readily verifiable. See Roberts, 131 F.4th at 249.

This court's conclusion here is not at odds with Roberts, as the court there specifically noted that, "in some instances . . . claims that alleged debts never occurred," as well as "some disputes that implicate legal questions and legal doctrines," such as whether Plaintiff was the one who applied for the subject student loans, could be objectively and readily verifiable. See Roberts, 131 F.4th at 252; cf. Thompson v. Santee Auto. LLC, No. 2:26-cv-749, 2026 WL 1026160, at *4 (D.S.C. Apr. 16, 2026) (finding that the plaintiff's allegation that "he intended to and did co-sign documents . . . shift[ed] the dispute from a straightforward question of identity—i.e., whether [the plaintiff] incurred the debt at all—to the more complex question of whether

the signature appearing on the documents belonged to [the plaintiff]").

At base, discovery will be necessary to develop the facts of this case, such as what information Plaintiff provided to Defendants, as well as what information Defendants relied upon in concluding that Plaintiff was not the borrower on the three (3) NELNET Loans. But for purposes of these Motions to Dismiss, Plaintiff has plausibly alleged an actionable inaccuracy to state a claim under Section 1681s-2(b). See Roberts, 131 F.4th at 249.

**b. Reasonable Investigation**

The DOE and Nelnet also argue that Plaintiff does not plausibly allege that they failed to conduct reasonable investigations into his disputes. Specifically, the DOE asserts that "Plaintiff conflates the adequacy of the investigation with the [DOE]'s ultimate decision based upon the information provided to it." ECF No. 32 at 22. Nelnet argues that Plaintiff fails to "allege any details regarding . . . the kind of investigation Nelnet should have performed, what it should have reviewed, who it should have consulted, and what exactly it would have discovered." ECF No. 33 at 22.

Neither argument is compelling. The Fourth Circuit has held that a "reasonable investigation" under Section 1681s-2(b)(1) requires furnishers to conduct "some degree of careful inquiry" into "their records to determine whether the disputed information

can be verified." Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 430-31 (4th Cir. 2004); cf. Saunders, 526 F.3d at 148 ("Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading."). Moreover, in Roberts, the court explained that "the scope of an investigation into objectively and readily verifiable information is not limited to confirming accurate transcription of a debt's amount or the name of the debtor." 131 F.4th at 251-52.

Here, Plaintiff alleges that the DOE's and Nelnet's investigations into the accuracy of the disputed information were perfunctory and did not rise to the level of "careful inquiry" necessitated by Section 1681s-2(b). See ECF No. 27 ¶ 96 ("Discovery will show that all the Defendant Furnishers did when supposedly investigating Plaintiff's disputes from the CRAs was consult their own internal account records and simply report back to the CRAs the same inaccurate information Plaintiff was disputing."); see also id. ¶ 109 ("The fraudulent loans were opened in Plaintiff's name using an address that had never before been associated with Plaintiff - a class hallmark of identity theft that should have alerted Defendant Furnishers to this fraud but which, instead, they completely ignored."). At base, these allegations create a question of fact as to the exact nature of the DOE's and Nelnet's respective investigations into Plaintiff's

disputes, which can be further developed through discovery. See Twombly, 550 U.S. at 570. But at this juncture, construing these allegations as true, Plaintiff has plausibly stated a failure to reasonably investigate claim under Section 1681s-2(b). See Roberts, 131 F.4th at 249, 251-52; Johnson, 357 F.3d at 430-31.

### *3. Punitive Damages*

The DOE also argues that Plaintiff does not adequately allege that it "willfully" failed to investigate his disputes in order to recover punitive damages. ECF No. 32 at 25. A consumer may sue a furnisher to recover punitive damages for willful or reckless noncompliance with the FCRA. See 15 U.S.C. § 1681n(a); Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007) ("[T]he phrase 'willfully fails to comply' in § 1681n(a) . . . reach[es] reckless FCRA violations."). For purposes of a motion to dismiss, "courts have found a plaintiff sufficiently pleads willfulness or recklessness when he or she asserts that a defendant has repeatedly violated FCRA or was aware of FCRA's requirements but failed to comply." Jones v. Equifax, No. 3:14-cv-678, 2015 WL 5092514, at *3 (E.D. Va. Aug. 27, 2015) (Lauck, J.) (emphasis added) (collecting cases). "Whether an act was done with knowing or reckless disregard for another's rights remains a fact-intensive question." Id. (citation modified).

Here, Plaintiff alleges that the DOE "had notice of" and that its "lawyers or other management employees responsible for FCRA

compliance had reviewed" published Fourth Circuit precedent that set forth furnishers' obligations under the FCRA, including Saunders, 526 F.3d 142, and Johnson, 357 F.3d 426. See ECF No. 27 ¶¶ 222, 224; see also id. ¶ 63 ("Defendant Furnishers have long been aware that a furnisher must fully and accurately report to the CRAs the results of an investigation, including whether or not the consumer disputes such reporting." (citing Saunders, 526 F.3d 142)). Because Plaintiff alleges that, despite being aware of these well-established duties, the DOE failed to comply with its obligations under Section 1681s-2(b), Plaintiff has sufficiently alleged willful violations by the DOE to bring a claim for punitive damages for purposes of a motion to dismiss. See Jones, 2015 WL 5092514, at *3.

***4. Emotional Distress***

Finally, both the DOE and Nelnet contend that Plaintiff's allegations of emotional distress are conclusory and unsupported by sufficient factual allegations. See ECF Nos. 32 at 29 (DOE), 33 at 23 (Nelnet). However, in making their respective arguments, both Defendants rely on legal standards applicable at the summary judgment stage, not for motions to dismiss. See, e.g., ECF No. 32 at 29 (DOE, quoting the standard from Reed v. Experian Information Solutions, Inc., 321 F. Supp 2d 1109, 1115 (D. Minn. 2004), in which the court granted summary judgment to the defendant in an FCRA case), 33 at 23 (Nelnet, quoting the standard from Tigrett v.

Rector & Visitors of University of Virginia, 290 F.3d 620, 629 (4th Cir. 2002), which was on appeal from a grant of summary judgment).

These inapplicable standards aside, a review of the Amended Complaint demonstrates that Plaintiff does allege details of his emotional distress beyond conclusory statements. Plaintiff alleges that he has suffered "[m]ental anguish, stress, aggravation" and other physical manifestations of emotional distress, including "depression, anxiety, headaches, chest tightness, irritability, sleep loss, stomach pain, nausea, loss of appetite, changes in weight, embarrassment, humiliation, harm to relationships, worsening of existing illness, the need to take medication, difficulty concentrating, harm to reputation, and loss of privacy." ECF No. 27 ¶ 191; see id. ¶¶ 248, 255, 271. These allegations are sufficient to survive a motion to dismiss, as they provide Defendants "with fair notice of the claims" and "are more robust than other FCRA cases within the Fourth Circuit that were not dismissed at this stage." Denton v. JPMorgan Chase & Co., No. 4:19-cv-114, 2020 WL 5909153, at *9 (E.D. Va. Oct. 6, 2020) (Davis, C.J.) (collecting cases); see, e.g., Gerena v. Freedom Mortg. Corp., No. 3:23-cv-78, 2024 WL 1023033, at *13 (E.D. Va. Mar. 8, 2024) (Lauck, J.) (holding that the plaintiff's alleged harms of "out-of-pocket expenses, embarrassment, humiliation, and other mental and emotional distress" were sufficient allegations

of actual damages to maintain a FCRA claim at the motion to dismiss stage (citation modified)).

In sum, with regard to the FCRA Claims, and for the reasons stated above, the court **DENIES** the DOE's Motion to Dismiss, ECF No. 31, in its entirety, and **DENIES** Nelnet's Motion to Dismiss, ECF No. 33, on Counts III, IV, and V.

### C. Counts VI, VII, VIII, and IX: State Law Claims

In addition to the FCRA Claims, Plaintiff also alleges four (4) state-law claims against Nelnet, all of which arise out of various provisions of the Virginia Code. Count VI alleges a violation of Section 6.2-2610(A)(2), which provides that a "qualified education loan servicer"[15] shall not:

---

[15] The Virginia Code defines a "qualified education loan servicer" as any person that:

> 1. (i) Receives any scheduled periodic payments from a qualified education loan borrower or notification of such payments or (ii) applies payments to the qualified education loan borrower's account pursuant to the terms of the qualified education loan or the contract governing the servicing;
>
> 2. During a period when no payment is required on a qualified education loan, (i) maintains account records for the qualified education loan and (ii) communicates with the qualified education loan borrower regarding the qualified education loan, on behalf of the qualified education loan's holder; and
>
> 3. Interacts with a qualified education loan borrower, which includes conducting activities to help prevent default on obligations arising from qualified education

> Engage in any unfair or deceptive act or practice toward any person or misrepresent or omit any material information in connection with the servicing of a qualified education loan, including misrepresenting (i) the amount, nature, or terms of any fee or payment due or claimed to be due on a qualified education loan; (ii) the terms and conditions of the loan agreement; or (iii) the borrower's obligations under the loan[.]

Va. Code § 6.2-2610(A)(2); see ECF No. 27 ¶¶ 267-73. Count VII alleges a violation of Section 6.2-2610(A)(5), which prohibits qualified education loan servicers from "[p]rovid[ing] inaccurate information to a nationally recognized consumer credit bureau." Va. Code § 6.2-2610(A)(5); see ECF No. 27 ¶¶ 274-79. Count VIII alleges a violation of Section 6.2-2619(A)(2), which creates a private cause of action for any person who suffers damages due to a loan servicer's failure to "[c]omply with all applicable federal laws related to qualified education loan servicing," such as the FCRA. Va. Code § 6.2-2619(A)(2), (B); see ECF No. 27 ¶¶ 280-85. Finally, Count IX alleges a violation of the Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-200. See ECF No. 27 ¶¶ 286-94.

Nelnet seeks relief from the state-law claims under Rule 12(b)(6) on three (3) grounds. First, Nelnet contends that Plaintiff cannot allege that it "reported, published, or

---

> loans or to facilitate any activity described in clause (i) or (ii) of subdivision 1.

Va. Code § 6.2-2600. Nelnet does not dispute that it is a qualified education loan servicer as defined by the statute. See ECF No. 33.

disseminated inaccurate information" about the loans as a matter of law. ECF No. 33 at 24. Second, Nelnet claims that Counts VI, VII, and VIII[16] are "preempted by federal law." Id. at 25. Third, Nelnet asserts that Count IX fails because "the transactions at issue are not subject to the VCPA." Id. at 28.

As an initial matter, Nelnet's first ground for dismissal is a reiteration of its arguments raised against Plaintiff's FCRA Claims. See id. at 24 ("Each of [the state-law claims] derive from [Plaintiff's] federal FCRA claims and arise out of the same legal theory, and therefore fail for the same reasons."). Because the court has already addressed and rejected these arguments above,[17] it need not readdress them here. The court takes Nelnet's remaining arguments in turn.

***1. Preemption (Counts VI, VII & VIII)***

The Supremacy Clause of the United States Constitution provides that federal law "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. "Thus, if a state law 'conflicts with, or frustrates, federal law, the former must give way.'" N. Va. Hemp & Agric., LLC v. Virginia, 125 F.4th 472, 492 (4th Cir. 2025) (quoting CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 663

[16] Counts VI, VII, and VIII all arise out of Title 6.2, Chapter 26 of the Virginia Code, which establishes the licensing and regulatory framework for qualified education loan servicers. See Va. Code §§ 6.2-2600 to 6.2-2622.

[17] See supra Section IV.B.

(1993)). But under the principles of federalism, courts "apply the Supremacy Clause with 'the basic assumption that Congress did not intend to displace state law.'" Id. (quoting S. Blasting Servs., Inc. v. Wilkes Cnty., 288 F.3d 584, 589-90 (4th Cir. 2002)).

Here, Nelnet argues that Counts VI, VII, and VIII are preempted by the Higher Education Act ("HEA") through express and obstacle preemption. See ECF No. 33 at 26-27. For the reasons set forth below, Nelnet does not prevail on either preemption argument. Accordingly, the court **DENIES** Nelnet's Motion to Dismiss, ECF No. 33, on Counts VI, VII, and VIII.

**a. Express Preemption**[18]

Express preemption occurs when Congress clearly expresses its intent to preempt state law "through 'an express preemption provision' explicit in the federal statute itself." Student Loan Servicing All. v. District of Columbia, 351 F. Supp. 3d 26, 47 (D.D.C. 2018) (quoting Arizona v. United States, 567 U.S. 387, 399 (2012)); see Oneok, Inc. v. Learjet, Inc., 575 U.S. 373, 376 (2015) ("Congress may . . . pre-empt, i.e., invalidate, a state law through federal legislation.").

[18] Nelnet's Motion to Dismiss also asserts that "[t]o the extent Plaintiff's claim under the VCPA [Count IX] is based on [Counts VI, VII, and VIII], it is preempted for the same reasons." ECF No. 33 at 28. Because the court has determined that Counts VI, VII, and VIII are not preempted by the HEA, Count IX is not preempted, either.

Here, Nelnet does not base its express preemption arguments on an express preemption provision under the HEA. Instead, Nelnet argues that the HEA "provides the exclusive mechanism for consumers to challenge their legal responsibility for federal student loans on the basis of identity theft or fraud" because it "explicitly and exclusively delegat[es] the responsibility for discharging federal student loans to the Secretary of Education." ECF No. 33 at 26 (emphasis in original) (citing 20 U.S.C. § 1087); see 20 U.S.C. § 1087(c)(1) ("If a borrower who received, on or after January 1, 1986, a loan made, insured, or guaranteed under this part and the student borrower['s] . . . eligibility to borrow under this part was falsely certified by the eligible institution or was falsely certified as a result of a crime of identity theft . . . then the Secretary shall discharge the borrower's liability on the loan . . . ."). Thus, according to Nelnet, because Counts VI, VII, and VIII seek to challenge Plaintiff's "legal responsibility for a federal student loan," they are expressly preempted by the HEA. ECF No. 33 at 26.

The statutory text does not support Nelnet's argument. Far from clearly expressing Congress' intent to preempt state law, nothing in Section 1087(c)(1) of the HEA imposes any limitations on state statutes seeking to regulate the conduct of student loan servicers. See 20 U.S.C. § 1087(c)(1). Further underscoring this conclusion is the existence of several other provisions in the HEA

that do expressly express certain state laws, none of which apply to the types of statutes at issue in this case. See, e.g., id. § 1091a(a) (displacing state statutes of limitations); id. § 1091a(b) (displacing state infancy defenses); id. § 1098g (displacing state disclosure requirements). That Congress chose to expressly preempt some state laws and not others indicates that Congress did not intend for the HEA to "automatically preempt all state laws." Coll. Loan Corp. v. SLM Corp., 396 F.3d 588, 596 n.5 (4th Cir. 2005) (emphasis in original); see Keams v. Tempe Tech. Inst., Inc., 39 F.3d 222, 225 (9th Cir. 1994) ("[The HEA's] express provisions for preemption of some state laws imply that Congress intentionally did not preempt state law generally, or in respects other than those it addressed."). Here, Nelnet's arguments do not support a conclusion to the contrary.

**b. Obstacle Preemption**

Nelnet's obstacle preemption argument fares no better. "Obstacle preemption occurs when a state law stands as an obstacle to the accomplishment and execution of the full purposes of the federal law." N. Va. Hemp & Agric., 125 F.4th at 493 (citation omitted). Assessing an obstacle preemption claim requires the court to "ascertain[] the construction of the two statutes" before determining "whether they are in conflict." Id. (citation omitted). Importantly, however, "courts should not seek out

conflicts where none clearly exist." Id. (citing Coll. Loan Corp., 392 F.3d at 598).

Similar to its express preemption argument, Nelnet argues that because the HEA "is the only way to ensure that a debtor is no longer obligated on a federal student loan," Plaintiff's attempt to challenge the reporting of the fraudulent loans on his credit report is a "type of legal circumvention that frustrates the purposes of Congress in passing the HEA." ECF No. 33 at 27 (citation omitted). However, Nelnet fails to explain how, exactly, compliance with Virginia's Qualified Education Loan Servicer[19] provisions create an "obstacle" to compliance with the HEA. The statutory provisions under which Counts VI, VII, and VIII arise are intended to protect borrowers from unfair or deceptive conduct by loan servicers; they do not prescribe methods by which a borrower may be discharged from his obligations on qualified education loans, as does the HEA. Compare Va. Code § 6.2-2610, and Va. Code § 6.2-2619, with 20 U.S.C. § 1087(c)(1).

Moreover, Plaintiff here does not seek to challenge his obligations as to the student loans; rather, Counts VI, VII, and VIII challenge Nelnet's conduct as a qualified education loan servicer by alleging that Nelnet misrepresented the amount of student loans owed by Plaintiff and that it furnished inaccurate

---

[19] See supra note 16 and accompanying text.

information to national CRAs. See ECF No. 27 ¶¶ 267-85. It is unclear to the court how the state regulations under which Plaintiff's challenges arise "stand[] as an obstacle to the accomplishment and execution of" the purpose of the HEA's administrative discharge process. See N. Va. Hemp & Agric., 125 F.4th at 493 (citation omitted). As such, the court finds no conflict between these statutes. See id. (citing Coll. Loan Corp., 392 F.3d at 598).

### *2. The Virgina Consumer Protection Act (Count IX)*

The VCPA prohibits certain "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Va. Code § 59.1-200. The basis for Plaintiff's VCPA claim, however, arises from Section 6.2-2621 of the Virginia Code, which provides that "[n]otwithstanding the provisions of § 59.1-199 [of the VCPA], any violation of the provisions of this chapter shall constitute a prohibited practice in accordance with § 59.1-200 and shall be subject to any and all of the enforcement provisions of the Virginia Consumer Protection Act." Va. Code § 6.2-2621;[20] see ECF No. 27 ¶ 287. Thus, pursuant to Section 6.2-2621, Count IX of the Amended Complaint alleges that Nelnet violated the VCPA each

[20] Section 6.2-2621 of the Virginia Code is part of the same Qualified Education Loan Servicers provisions as the provisions underlying Counts VI, VII, and VIII. See Va. Code § 6.2-2621; supra note 16 and accompanying text.

time it violated the provisions of the Virginia Code that serve as the basis for Counts VI, VII, and VIII. See ECF No. 27 ¶ 288.

In its Motion to Dismiss, Nelnet argues that Plaintiff's claim under Count IX is barred by Section 59.1-199 of the VCPA, ECF No. 33 at 28, which provides the VCPA does not apply to, inter alia, "[t]hose aspects of a consumer transaction that are regulated by the Federal Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq.," Va. Code § 59.1-199(3). Nelnet argues that, because Plaintiff's state-law claims are predicated on conduct regulated by the FCRA, which is part of the Federal Consumer Protection Act, see 15 U.S.C. § 1681s-2, Count IX falls outside the purview of the VCPA. ECF No. 33 at 28-29.

The court disagrees. As noted by Plaintiff in his Response to Nelnet's Motion to Dismiss, see ECF No. 46 at 31, Section 6.2-2621 of the Virginia Code begins with the phrase: "Notwithstanding the provisions of § 59.1-199 . . . ." Va. Code § 6.2-2621 (emphasis added). And it is well understood that "the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." Cisneros v. Alpine Ridge Grp., 508 U.S. 10, 18 (1993). Thus, in the absence of express direction from state courts to the contrary, this court presumes that Virginia's General Assembly intended Section 6.2-2621's "notwithstanding" clause to carve out an exception to the VCPA's

exclusion provision, Va. Code § 59.1-199. See generally Va. Elec. & Power Co. v. State Corp. Comm'n, 861 S.E.2d 47, 52 (Va. 2021) ("We presume that the legislature chose, with care, the specific words of the statute and that the act of choosing carefully some words necessarily implies others are omitted with equal care." (citation modified)). As such, Plaintiff's VCPA claim remains viable. Accordingly, the court **DENIES** Nelnet's Motion to Dismiss, ECF No. 33, on Count IX.

## V. CONCLUSION

For the foregoing reasons, the DOE's Motion to Dismiss, ECF No. 31, and Nelnet's Motion to Dismiss, ECF No. 33, are **DENIED**. The Clerk is **DIRECTED** to forward a copy of this Memorandum Order[21] to counsel for all parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

September 15, 2026

[21] For reference purposes, an Index is attached to this Memorandum Order.

INDEX


I. FACTUAL BACKGROUND .......................................... 1

A. The Parties ................................................. 1

B. Alleged Facts ............................................... 3

II. PROCEDURAL HISTORY ......................................... 5

III. MOTION TO DISMISS FOR LACK OF JURISDICTION ................ 7

A. Rule 12(b)(1) Standard of Review ............................ 7

B. Analysis .................................................... 8

IV. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ............. 10

A. Rule 12(b)(6) Standard of Review ............................ 10

B. Counts III, IV, and V: The FCRA Claims ...................... 11

1. Threshold Arguments ......................................... 13

a. Whether the DOE is a "Furnisher" Under the FCRA ............. 14

b. The Higher Education Act .................................... 16

2. Failure to State a Claim .................................... 18

a. Plaintiff's Alleged Inaccuracy .............................. 19

b. Reasonable Investigation .................................... 23

3. Punitive Damages ............................................ 25

4. Emotional Distress .......................................... 26

C. Counts VI, VII, VIII, and IX: State Law Claims .............. 28

1. Preemption (Counts VI, VII & VIII) .......................... 30

a. Express Preemption .......................................... 31

b. Obstacle Preemption ......................................... 33

2. The Virgina Consumer Protection Act (Count IX) .............. 35

V. CONCLUSION .................................................. 37